## COUNCIL *v.* MURPHY.

[76 South. 553, Division B.]

BILLS AND NOTES. *Conflict in evidence. Question for jury.*

Where, in a suit on a note by the assignee thereof, the defendant maker pleaded as a set-off certain notes assigned to him by plaintiff's assignors and there was a material conflict in the evidence as to whether the notes pleaded by defendant as set-offs were assigned to him with the understanding that plaintiff's assignors would be responsible for their payment and as to whether there was a demand for payment on the makers and as to whether plaintiff promised to pay them after knowledge of the makers' default in payment. In such case a peremptory instruction should not have been given but the case should have been submitted to the jury.

115 Miss.—38

Appeal from the circuit court of Washington county. Hon. E. E. Everett, Judge.

Suit by E. C. Murphy against G. G. Council. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

Etheridge, J., delivered the opinion of the court.

E. C. Murphy brought suit against G. G. Council on a promissory note for five thousand four hundred seventy-eight dollars and fifty cents dated November 25, 1912, and due November 15, 1913; said note being made payable to Murphy Bros., and assigned by them to E. C. Murphy. Council pleaded a set-off to this note, alleging on the date of the making of the note sued on that Murphy Bros., the payee in the said note, for a valuable consideration indorsed to the defendant, Council, various and sundry promissory notes (seventeen in number), payable to the order of Murphy Bros., and that each and every one of the said notes were presented for payment and were dishonored, whereof the said Murphy Bros. had due notice, but did not pay the same, or any one of them, all of which occurred prior to any notice by the defendant of the assignment of the notes sued on by Murphy Bros. to the plaintiff herein, and that the defendant was entitled to set off said notes against the note sued upon. The dates, amounts, and maturity of each of the notes is set out in the plea, all of which notes, except one, were past due on the date of the giving of the note sued on, and this note was for one hundred dollars, and became due and payable five months after the 9th day of July, 1912. Copies of said notes are attached to the plea, and each of them are indorsed on the back by Murphy Bros. as follows:

"Arcola, Miss., Nov. 25, 1912.
"For value received we hereby transfer the within note to G. G. Council.

"[Signed]    Murphy Brothers."

Various replications to this plea were filed by the plaintiff, and demurrers to many of them interposed, and some of them sustained. The pleadings are voluminous, but finally in substance brought down to about the following propositions: That the above indorsement was not an indorsement by which Murphy Bros. were liable as indorsers, but was a mere transfer of title; that the plaintiff was purchaser of the note sued on for value, withiut notice of the set-off; that the defendant did not exercise due diligence in presenting the notes for payment and giving notice thereof to Murphy Bros.; that there was no consideration for the note to support the indorsement making Murphy Bros. liable; that there was an agreed value of the notes made at the time of the indorsement; and that Council had received enough property in payment to satisfy the amount of this agreed value. These allegations of the replications are denied by the defendant, and issue joined.

It appears from the defendant's testimony that Council and Murphy had exchanged plantations, Council getting in said exchange a plantation in Washington county, Miss., and the Murphys getting plantations in Illinois; that after such exchange of plantations Murphy Bros. desired to sell to Council certain live stock, farming utensils, and other personal property appurtenant to and necessary for use on the farm, and accounts and notes due by various tenants of Murphy Bros. on account of such stock and personal property; that Council desired to retain the tenants, and would need the equipment necessary for operating the farm, and that Murphy Bros. represented that they owned the equipment and undertook to guarantee that the payment of the notes would be made; that it was understood by Council that their indorsements would make the notes good if the negroes

did not pay the notes; that Murphy Bros. requested that
no proceedings be taken against the negroes, and no
effort to take from them the stock or to collect the mon-
ey involved in the notes, until after the gathering sea-
son of the year 1912—said tenants and promisors on
said notes used as set-off being then on the plantation
engaged in gathering the crops.   It further appears that
about the latter part of December the agent of Council
interviewed the negroes with reference to the notes
and said live stock, and the negroes refused to pay the
notes, claiming that they did not owe them, or that they
could not get a settlement,   and they refused to give
up the stock on the ground that Murphy Bros. had no
right or title to the stock and had no right to sell them;
that the agent of Council sought Murphy Bros. about the
last of December, 1912, disclosed to them the contention
of the negroes and their refusal to pay the notes; and
that Murphy Bros. stated that they were liable for the
notes, and if the negroes did not pay them that they
would be responsible; that Murphy Bros., being then en-
gaged in moving away from the plantation, would not
make a settlement at that time, but agreed to do so later,
but went away, and never did in fact settle; that Council
gave notice to Murphy Bros. not to assign his note, as
he claimed these set-offs, and that if the note was as-
signed that they would be responsible to Council for
said notes not paid by said negroes.   Council further
testified that, when the plaintiff came to see him about
collecting the note in 1913, he (Council) saw the note
sued on at that time, and examined the back of the note,
and at that time there was no indorsement on the
back thereof.   He states, further, that E. C. Murphy
told him that he was merely acting for Murphy Bros.
as agent; that this set-off was a surprise to him, and
that he would have to see Murphy Bros. before allowing
it; and that he went away with the understanding that
he would see Murphy Bros. and see about adjusting
the matter.   All this testimony on the part of Council

and his witnesses is contradicted by Murphy and Murphy's witnesses, some of whom were makers of the notes used as a set-off; and some of the tenants testified that no demand was made for payment by Council or his agent. There is a distinct and sharp conflict in the evidence as to whether the notes pleaded as a set-off were assigned by Murphy Bros. to Council with the understanding that Murphy Bros. would be responsible for the payment of said notes, and there is a conflict as to whether there was a demand for payment on the makers of the notes used as set-off, and whether Murphy promised to pay said notes after knowledge of the default in payment.

We think the court below erred in giving the peremptory instruction to find for the plaintiff for the full amount of the note sued on, with six per cent. interest; that the questions should have been submitted to the jury under proper instructions. The plaintiff's testimony might have been accepted by the jury, or it might not. If the plaintiff's version of the facts was accepted, he would, of course, be entitled to recover. On the contrary, if the defendant's version of the transaction was believed by the jury, the defendant was entitled to be allowed the set-off, or so much thereof as the jury believed to be due and unpaid. In other words, if the testimony of Council and his witness constituted an agreed statement of facts, the court could not have decided for the plaintiff. The court should not have granted a peremptory instruction, where there is a material conflict in the evidence. Judgment of the court below is reversed, and the cause remanded.

*Reversed and remanded.*